Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| LUISA B. RONDÓN ACOSTA<br><br>Apelante<br><br>v.<br><br>SANTO ROSARIO POLANCO<br><br>Apelado | TA2026AP00464 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil núm.: CA2018CV03412 (401)<br><br>Sobre: División de Bienes Gananciales |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 16 de junio de 2026.

Comparece ante este tribunal apelativo, la Sra. Luisa Brunilda Rondón Acosta (señora Rondón Acosta o apelante), mediante el recurso de apelación de epígrafe, solicitándonos que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI), el 6 de marzo de 2026, notificada el mismo día. Mediante este dictamen, el foro primario desestimó, con perjuicio, la demanda instada por la apelante y ordenó la continuación de los procedimientos respecto a la *Reconvención* incoada por el Sr. Santo Rosario Polanco (señor Rosario Polanco o apelado).

Por los fundamentos que expondremos a continuación, determinamos revocar el dictamen apelado.

### I.

El 5 de diciembre de 2018 la señora Rondón Acosta presentó demanda sobre división de bienes gananciales en contra del señor Rosario Polanco. En lo aquí pertinente, se adujo que mientras ellos estuvieron casados adquirieron, entre otros bienes, la Panadería

Rica Dona, ubicada en la Calle 513, Bloque 204 #44 y #43, Villa Carolina, en el pueblo de Carolina.[1] Expuso que no han llegado a un acuerdo para la división de los bienes detallados en el escrito, por lo que se peticionó la intervención del tribunal.

El 4 de febrero de 2019 el apelado instó *Contestación a Demanda y Reconvención*. Entre sus defensas aceptó la lista de las propiedades sujetas a liquidación, y en la *Reconvención* arguyó que la señora Rondón Acosta es quien administra las cuentas bancarias gananciales, y lo ha estrangulado económicamente al impedirle participación en los bienes.

El 23 de abril de 2019 la apelante peticionó enmendar la demanda para establecer que la estructura donde ubica la Panadería Rica Dona es un bien privativo que ella adquirió previo al matrimonio celebrado entre las partes y adquirido con préstamos obtenidos antes de dicho matrimonio. Así, adujo que al ser el negocio Rica Dona uno privativo el señor Rosario Polanco solo tiene derecho a la parte proporcional del aumento del valor del mismo como resultado de su esfuerzo y trabajo. La enmienda fue autorizada por el TPI el 23 de mayo siguiente.

El 12 de agosto de 2019, el apelado instó *Contestación a la Demanda Enmendada, Enmiendas a las Defensas Afirmativas y a la Reconvención*.[2] En esta, mencionó que él es dueño en conjunto con la apelante de la Panadería Rica Dona. Además, solicitó la imposición de costas, gastos y honorarios de abogado por temeridad.

El 14 de agosto de 2019 el TPI celebró vista a la que comparecieron los representantes legales de las partes. De la *Minuta*[3] surge que, luego de escuchados los argumentos respecto a la operación del negocio, el tribunal concedió el término de veinte

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC), Entrada, núm. 1.
[2] SUMAC TPI, Entrada núm. 26.
[3] SUMAC TPI, Entrada núm. 30.

(20) días "a las partes para que se pongan de acuerdo en cuanto al nombramiento de un administrador judicial, o si se va a utilizar la figura del comisionado; o ambas cosas". Asimismo, expresó que "[q]uedan apercibidas las partes que de no ponerse de acuerdo o no rendir frutos las gestiones, el tribunal emitirá una orden para la designación de la figura según corresponda en el presente caso".

El 7 de noviembre, el foro apelado realizó conferencia sobre el estado procesal a la que asistieron los abogados de las partes. De la *Minuta*[4] surge que "los abogados se reunieron con el licenciado y CPA Edgardo Javier Areizaga Soto; quien le manifestó que está disponible para hacer los trabajos de comisionado especial y contador partidor". Al respecto, el Juez Mattei Román expresó que había estudiado con el licenciado a lo que los abogados manifestaron no tener objeción para que el Magistrado continúe presidiendo el pleito. Asimismo, se indica que el tribunal concedió término para que presenten una moción conjunta sobre los términos y condiciones de la contratación, incluyendo los costos y la forma de pago.

El 26 de noviembre de 2019 la señora Rondón Acosta contestó la *Reconvención*[5] en la que negó que todas las propiedades mencionadas en el referido escrito son sujetas a liquidación, lo que incluye la Panadería Rica Dona. Reafirmó que este negocio no es un bien ganancial, aunque reconoció que el apelado tiene interés económico en la misma.

El 5 de diciembre de 2019 el apelado instó una segunda moción en la que le peticionó al foro primario la emisión de órdenes dirigidas a varios bancos y al Departamento de Transportación y Obras Públicas para "poder contar con la prueba dirigida al Comisionado Especial y Contador Partidor que se ha seleccionado y

---

[4] SUMAC TPI, Entrada núm. 33.
[5] SUMAC TPI, Entrada núm. 34.

se estará contratando próximamente para poder facilitar la pronta liquidación de la comunidad post-ganancial entre las partes". El 8 de diciembre siguiente, el TPI emitió las órdenes según requeridas.

El 29 de enero de 2020 el TPI emitió Orden en la que concedió el plazo de veinte (20) días, a las partes, para informar si hay oposición de que el Lic. Edgardo Javier Areizaga sea nombrado Contador Partidor y Administrador de los bienes. Agregó que, "[t]ranscurrido el término sin oposición, como tal queda nombrado".

El 4 de febrero el señor Rosario Polanco contestó lo ordenado e informó que el licenciado Areizaga Soto fue contratado por las partes como Contador Partidor y Comisionado, por lo que se reunió con éstas para recopilar información.[6] El 11 de febrero siguiente, el foro *a quo* emitió Resolución en la que nombró al licenciado como Contador Partidor, por acuerdo entre las partes, y decretó que "los costos y honorarios serán cubierto[s] a partes iguales por las partes".[7]

El 13 de febrero posterior, el Contador Partidor y Comisionado le informó al TPI que el 4 de febrero envió un *email* a los abogados de las partes y sus contadores para que le proveyeran información financiera de la Panadería Rica Dona.[8] Expuso que el Sr. Pedro Rosario, contador de la apelante, incumplió con lo ordenado, por lo que le solicitó al tribunal que ordenase a la señora Rondón Acosta el cumplimiento con la solicitud. Añadió que "[l]a falta de esta información está causando un daño a la corporación ya que no se han podido radicar ciertas W-2 y no se están reportando todas las ventas de IVU al Departamento de Hacienda mediante el sistema de SURI".

---

[6] SUMAC TPI, Entrada núm. 41.
[7] SUMAC TPI, Entrada núm. 45. El dictamen fue notificado al próximo día.
[8] SUMAC TPI, Entrada núm. 52.

El mismo 13 de febrero, la señora Rondón Acosta presentó moción en la que, entre otros asuntos, solicitó la paralización de la designación del Comisionado Partidor debido a que ella suscribió el contrato bajo coacción e intimidación y no fue orientada por su anterior abogado antes de firmarlo.[9] Asimismo, solicitó que se paralicen las órdenes emitidas por el tribunal en contra de los bancos. También manifestó que "la Corporación Panadería Rica Dona Inc., Registración #163013, y entendemos que no ha sido emplazada, no es [parte] en el caso de autos y no se está cumpliendo, con los principios básicos de jurisdicción no se est[á] cumpliendo con la Ley de Corporaciones a estos efectos en los procesos de requerimiento de documentos que la propia ley exige".

Mediante *Resolución y Orden* del 27 de febrero de 2020, el Juez Mattei Román se inhibió *motu proprio* de presidir el caso.

El 13 de mayo de 2020, en cumplimiento con la Orden emitida por el tribunal el 8 de abril, el Contador Partidor y Comisionado subrayó que:

> la parte demandante firmó la carta contrato el 14 de enero de 2020, luego que la carta le fue enviada por email a la representación legal de dicha parte el 7 de noviembre de 2019. Se le llevó en persona la carta contrato el 14 de enero de 2020 ya que se había empezado a proveer los servicios y faltaba su firma. Esta parte no fue "alegadamente [*sic*] nombrado por el Tribunal", esta parte s[í] fue nombrada por el Honorable Tribunal según la Notificación del 12 de febrero de 2020."[10]

El 15 de mayo de 2020, en respuesta a una Orden del TPI, el Contador Partidor y Comisionado explicó que nunca coaccionó ni intimidó a la apelante para que firmara el contrato. Indicó que la señora Rondón Acosta aceptó firmarlo y entregar el depósito y luego procedió a enseñar el local y explicar las operaciones del negocio.

---

[9] SUMAC TPI, Entrada núm. 53.
[10] SUMAC TPI, Entrada núm. 57.

El 22 de septiembre de 2020 el TPI llevó a cabo vista sobre el estado de los procedimientos mediante videoconferencia a la que comparecieron las partes y sus abogados. De la *Minuta*[11] surge que las partes estipularon que varios bienes son gananciales y que "están de acuerdo en que el inmueble donde ubica la panadería pertenece a la comunidad de bienes que existía entre las partes antes de que contrajeran matrimonio". Además, se indicó que el foro apelado concedió "a las partes hasta el 23 de octubre de 2020 para que presenten un informe preliminar conjunto para atender exclusivamente el nombramiento del Contador Partidor, en el cual deberán identificar todos los documentos que presentarán para sostener sus alegaciones, estipulación de hechos y documentos, relación de todos los testigos que presentarán, cualquier objeción a la parte contraria, entre otros".

El 3 de diciembre de 2020 el Juez Morales Gómez celebró vista sobre estado de los procedimientos mediante videoconferencia y del *Acta de vista sobre estado de los procedimientos,*[12] surge que "se discutió y se argumentó el nombramiento del Lcdo. Edgardo Javier Areizaga Soto, CPA, como Contador Partidor en el caso de autos. La licenciada Pizarro se sostiene en que no está de acuerdo en que el licenciado Areizaga funja como Contador Partidor en el caso, ya que existen algunas alegaciones de parcialidad en contra de la demandante". Asimismo, se establece que "[e]l Tribunal les concedió a las partes hasta hoy a las 5:00 de la tarde, para que cada parte proponga tres nombres para elegir un administrador del negocio. A su vez, les otorgó, a las partes, hasta el 15 de diciembre de 2020 para que presenten una moción informando si llegaron a un acuerdo en cuanto a la persona seleccionada por ambas partes para ocupar la posición de administrador".

---

[11] SUMAC TPI, Entrada núm. 83.
[12] SUMAC TPI, Entrada núm. 90.

El 11 de mayo de 2021 el señor Rosario Polanco instó escrito intitulado *Moción Solicitando que se Nombre Tasador,*[13] en el que informó al tribunal primario que "[a]l igual que ocurre con el Contador – Partidor y el Administrador las partes no se han puesto de acuerdo en seleccionar al tasador por lo que la parte compareciente solicita al Honorable Tribunal que nombre un tasador para que tase las propiedades pertenecientes a la Comunidad de Bienes post ganancial que existe entre las partes".

El 19 de mayo posterior la apelante presentó moción ante el TPI en la que, ante la controversia con el nombramiento del licenciado Areizaga Soto, como Contador Partidor y Comisionado, propuso al Lcdo. Raúl Tirado y al Lcdo. José Díaz Crespo para dicho cargo.[14] Asimismo, sugirió que el tribunal contrate a una Administrador para la Panadería Rica Dona a través del Comisionado para que analice la estructura de operación del negocio, ya que ella lo hace por cuatro (4) días y el apelado por tres (3).

El 25 de mayo el señor Rosario Polanco presentó oposición al referido escrito.[15] En este, el apelado enfatiza que interesa que el tribunal designe a un nuevo Contador Partidor, de entre los profesionales propuestos por las partes, o ponga en vigor el nombramiento del licenciado Areizaga Soto. De igual manera, solicitó que se nombre al Administrador del negocio y al tasador.

Mediante Resolución del 18 de junio de 2021, el TPI permitió la intervención en el caso del Sr. Pedro Paredes ex esposo de la apelante al entender que este es parte indispensable al tener participación en la liquidación del negocio.

---

[13] SUMAC TPI, Entrada núm. 145.
[14] SUMAC TPI, Entrada núm. 152.
[15] SUMAC TPI, Entrada núm. 155.

El 20 de agosto de 2021 el foro apelado, esta vez en voz de la Jueza Conde Rodríguez, emitió Resolución en la que resolvió la controversia relativa al nombramiento del licenciado Areizaga Soto como Contador Partidor y Comisionado.[16] Así, dejó sin efecto dicho nombramiento y en su lugar, designó **al CPA José Díaz Crespo**. Además, se nombró al Sr. David Ouviña Izquierdo como Tasador. Es importante acentuar que en el dictamen el foro de instancia le ordenó al nuevo Contador Partidor y Comisionado realizar lo siguiente:

> i.    Preparar un inventario de todos los bienes muebles e inmuebles que sean parte de la sociedad legal de bienes gananciales o que formen parte de una comunidad entre la parte demandada y demandante.
> ii.   Detallar los activos y pasivos que existan al presente
> iii.  Sobre la Panadería Rica Dona:
>       a. Gastos ordinarios y extraordinarios
>       b. Ganancias
>       c. Quién realiza los pagos de nómina y cualquier tipo de gasto relacionado al negocio
>       d. Cómo se dividen las ganancias
>       e. Cómo se maneja y administra actualmente la panadería
>
> El Comisionado aquí nombrado debe preparar un informe que contenga determinaciones de hechos y conclusiones de derecho sobre todo lo aquí encomendado, dentro de 60 días desde la notificación de la presente *Resolución.*

Ahora bien, a continuación, detallamos *in extenso* el trámite procesal del caso, posterior al antes mencionado y pertinente a la controversia que nos ocupa, según fuera consignado por el TPI en la *Sentencia Parcial* impugnada.[17]

> Luego de varios trámites procesales, el 20 de agosto de 2021, este tribunal emitió una Resolución en la que nombró al Lcdo. y CPA José D[í]az Crespo, como Comisionado y Contador partidor. El 11 de mayo de 2022[18], este tribunal emitió una Orden mediante la cual aprobó los acuerdos alcanzados por las partes según desglosados por el Comisionado.[19]

---

[16] SUMAC TPI, Entrada núm. 189.
[17] SUMAC TPI, Entrada núm. 562, a las págs. 1-3. Notas al calce adicionales añadidas en esta *Sentencia.* Énfasis, subrayado e itálicas en el original, y énfasis nuestro.
[18] SUMAC TPI, Entrada núm. 253.
[19] SUMAC TPI, Entrada núm. 250.

Posteriormente, el 24 de enero de 2024[20], se emitió una Orden para que el Comisionado evaluara la posibilidad de una adjudicación parcial de los bienes. El 19 de junio de 2024[21], el Comisionado presentó una *Moción en cumplimiento de orden y recomendación al Tribunal sobre la solicitud de adjudicación parcial de bienes gananciales* en la que recomendó la venta y adjudicación de algunos de los bienes. Finalmente, el 5 de julio de 2024[22], notificada digitalmente el 8 de julio de 2024, este tribunal emitió una Orden en la que acogió las recomendaciones del Comisionado y ordenó a las partes gestionar los asuntos requeridos para la venta y adjudicación de los bienes desglosados en el informe del Comisionado e informar el estado de los trámites en un término de treinta (30) días. Los asuntos ordenados en julio de 2024 son los que al día de hoy están pendientes de cumplirse. No obstante, por la situación de embargo por el Departamento de Hacienda que enfrenta la panadería se le ha requerido en reiteradas ocasiones **firmar una resolución corporativa autorizando la contratación de abogado y petición de quiebra[23]**. **En la fecha más reciente, el 16 de enero de 2026[24] el tribunal reiteró los asuntos dispuestos por el tribunal, emitió órdenes específicas y apercibió a la representación legal y a la parte demandante reconvenida, Sra. Luisa Brunilda Rondón Acosta de las consecuencias de un incumplimiento**. No obstante, a petición de la demandante-reconvenida, el 28 de enero de 2026[25] el tribunal emitió Orden en la concedimos una prórroga de 5 días a la demandante-reconvenida para cumplir con lo ordenado por el tribunal, **firmar la resolución corporativa requerida**, entre otros y **poder comenzar los trámites para lo ordenado desde el 5 de julio de 2024**. Los asuntos planteados han sido objeto de revisión por el Tribunal de Apelaciones, no han sido revocadas y son finales y firmes. **Aun así, no han sido cumplidas por la demandante-reconvenida**. A pesar de la prórroga concedida, el 2 de febrero de 2026[26] la demandante-reconvenida presentó - sin cumplir con lo ordenado - *Moción de objeción solicitud de protección* [*judicial*[. La parte demandada reconveniente pudo expresarse el 10 de febrero de 2026[27] y el Comisionado Especial el 13 de febrero de 2026.[28] Además, el 4 de marzo de 2026[29] el Comisionado Especial presentó ***Moción informativa sobre embargo por el Departamento de Hacienda y solicitud de orden del tribunal para la firma de resolución corporativa***. Ese mismo día, ***Moción informativa sobre aviso de embargo por el internal revenue service***[30] donde manifiesta la urgente necesidad de que la Sra. Luisa Rondón **firme la resolución corporativa requerida y ordenada por este tribunal**. El 5 de marzo la

---

[20] SUMAC TPI, Entrada núm. 383.
[21] SUMAC TPI, Entrada núm. 397.
[22] SUMAC TPI, Entrada núm. 400.
[23] SUMAC TPI, Entrada núm. 490.
[24] SUMAC TPI, Entrada núm. 545.
[25] SUMAC TPI, Entrada núm. 551.
[26] SUMAC TPI, Entrada núm. 554.
[27] SUMAC TPI, Entrada núm. 556.
[28] SUMAC TPI, Entrada núm. 558.
[29] SUMAC TPI, Entrada núm. 559.
[30] SUMAC TPI, Entrada núm. 560.

demandante-reconvenida presentó *Réplica a moción del comisionado # 559 y solicitud de Orden.*[31]

Para poder hacer efectiva la liquidación parcial y por la situación que enfrenta la Panadería, se le ha ordenado en reiteradas ocasiones a la demandante-reconvenida cumplir con diferente[s] actos. **Al día de hoy, la demandante-reconvenida contin[ú]a impidiendo que se cumpla con la Orden del 5 de julio de 2024, reiterado en Resolución del 10 de septiembre de 2025[32], 7 de octubre de 2025[33], 16 de octubre de 2025[34], 20 de noviembre de 2025[35], 3 de diciembre de 2025[36], la del 16 de diciembre de 2025[37], las dos resoluciones del 16 de enero de 2026**.[38]

**Esta actitud aparte de interferir en los procesos y manejo del caso pone en riesgo la continuidad de las operaciones de la corporación**. El Comisionado Especial así lo ha informado y ha sido enfático en que uno de los requisitos previo a la presentación de la petición de quiebra, es presentar una **Resolución Corporativa autorizando la contratación del abogado para la presentación de la petición de quiebra bajo el capítulo aplicable y designando al oficial que estará representando a la corporación ante el Tribunal de Quiebra**.

**En el presente caso la liquidación parcial ordenada tiene que cumplirse siendo ya una orden final confirmada por el foro apelativo**. Así también, el proceso de quiebra es el mecanismo apropiado que permitirá que la corporación se reorganice y provea un plan para atender todas sus obligaciones de una forma ordenada en beneficio de todas las partes con interés incluyendo al Departamento de Hacienda.

**Las mociones presentadas por la parte demandante-reconvenida han sido atendidas y se le ha apercibido en todas las ocasiones de las consecuencias de su incumplimiento**. El 5 de marzo de 2026 la demandante reconvenida presentó escrito titulado *R[é]plica a Moción del Comisionado # 559 y solicitud de orden.* **En dicha moción una vez más, pretende dar órdenes al Comisionado Especial designado sobre como dirigir los asuntos y de forma unilateral pretende modificar lo ordenado por el tribunal de forma reiterada**.

A base lo antes transcrito, el foro primario razonó que:[39]

Es nuestro deber tomar medidas para que la conducta de incumplimiento desplegada por la parte demandante-reconvenida no continúe afectando los procesos y el trámite del caso. **En varias ocasiones se le advirtió a la demandante-reconvenida que dicha**

---

[31] SUMAC TPI, Entrada núm. 561.

[32] SUMAC TPI, Entrada núm. 436.

[33] SUMAC TPI, Entrada núm. 447.

[34] SUMAC TPI, Entrada núm. 454.

[35] SUMAC TPI, Entrada núm. 490.

[36] SUMAC TPI, Entrada núm. 510.

[37] SUMAC TPI, Entrada núm. 524.

[38] SUMAC TPI, Entradas núms. 544 -545.

[39] SUMAC TPI, Entrada núm. 562, a las págs. 4-5. Notas al calce omitidas. Énfasis nuestro.

**conducta sería sancionada por el tribunal**. Así, lo advertimos claramente en la Resolución del 20 de noviembre de 2025, 3 de diciembre de 2025, las dos resoluciones del 16 de diciembre de 2025, resoluciones y la resolución del 16 de enero de 2026 y 20 de enero de 2026. Para corregir dicha conducta el tribunal impuso una sanción económica de $ 500.00 dólares la cual fue consignada el 23 de diciembre de 2025 mediante escrito titulado: Moción de consignación bajo protesta. En la moción la parte demandante-reconvenida expresa que consigna la suma impuesta estrictamente bajo protesta. No obstante, esta sanción económica que impuso el tribunal como medida reparadora para conseguir que lo ordenado se cumpla por la parte demandante-reconvenida no se materializó. **Este tribunal ha dado múltiples oportunidades a la demandante-reconvenida, fundamentado sus determinaciones y escuchado a todas las partes. No obstante, el tribunal no puede avalar que un caso no progrese y más aún se complique por una parte no obedecer lo ordenado por el tribunal.**

Por tanto, **habiendo dado cumplimiento cabal a lo dispuesto en la Regla 39.2 (a) de Procedimiento Civil se desestima la demanda incoada por la demandante-reconvenida con perjuicio y se ordena la continuación de los procedimientos en cuanto a la Reconvención**.

En desacuerdo, el 19 de marzo de 2026 la apelante presentó moción de reconsideración la cual fue denegada por el TPI mediante Resolución emitida y notificada el 6 de abril posterior.

Todavía inconforme, la apelante acude ante este foro intermedio mediante recurso de apelación imputándole al foro primario la comisión de los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA DE DESESTIMACIÓN CON PERJUICIO EL 6 DE MARZO DE 2026 SOBRE MATERIAS CUYO MANDATO NO HABÍA SIDO REMITIDO, LO QUE CONSTITUYE UNA ACTUACIÓN SIN JURISDICCIÓN Y NULA DE PLENO DERECHO.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL OMITIR LA SECUENCIA PROTECTORA OBLIGATORIA Y NO DISCRECIONAL DE LA REGLA 39.2(A) DE PROCEDIMIENTO CIVIL, PASANDO DIRECTAMENTE DE SANCIONES ECONÓMICAS A LA DESESTIMACIÓN CON PERJUICIO SIN CONCEDER EL TÉRMINO MÍNIMO ESTATUTARIO DE TREINTA (30) DÍAS, EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL FUNDAR LA SENTENCIA PARCIAL EN UNA PREMISA FÁCTICA INCORRECTA Y AL DESESTIMAR CON PERJUICIO SIN ADJUDICAR

PLANTEAMIENTOS SUSTANTIVOS PENDIENTES DE LA APELANTE, EN VIOLACIÓN DEL DERECHO CONSTITUCIONAL A SER OÍDA.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR LA SANCIÓN MÁS DRÁSTICA DISPONIBLE EN LEY DE FORMA MANIFIESTAMENTE DESPROPORCIONADA, SIN EXPLORAR REMEDIOS INTERMEDIOS Y SIN PONDERAR QUE LA CONDUCTA DE LA PETICIONARIA NO CONSTITUÍA CONTUMACIA ABSOLUTA NI ABANDONO DEL PLEITO, EN CONTRAVENCIÓN DE LA POLÍTICA PÚBLICA DE ADJUDICACIÓN EN LOS MÉRITOS.

ERRÓ EL TRIBUNAL AL DENEGAR LA MOCIÓN DE RECONSIDERACIÓN (ENTRADA #580) MEDIANTE UNA RESOLUCIÓN DE UN PÁRRAFO QUE CALIFICÓ DE 'GENERALIDADES' UN ESCRITO DE QUINCE PÁGINAS CON TREINTA Y TRES PÁRRAFOS NUMERADOS Y JURISPRUDENCIA ESPECÍFICA, SIN ADJUDICAR NI UNO SOLO DE LOS PLANTEAMIENTOS SUSTANTIVOS PRESENTADOS.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LA DEMANDA CALIFICANDO COMO OBSTACULIZACIÓN EL EJERCICIO DEL DERECHO CONSTITUCIONAL A LA REVISIÓN JUDICIAL, CUANDO LO QUE PERMANECÍA EN CONTROVERSIA NO ERA LA VALORACIÓN DEL NEGOCIO COMO ACTIVO ($740,000) NI SU ADJUDICACIÓN AL RECURRIDO —AMBAS FINALES Y FIRMES (ENTRADA #400)— SINO LA VALORACIÓN DE LA PARTICIPACIÓN ESPECÍFICA DE LA PETICIONARIA ($128,500), DETERMINACIÓN QUE DESCANSA EN TRECE HECHOS MATERIALES QUE LA RESOLUCIÓN DE SENTENCIA SUMARIA DE 27 DE ENERO DE 2021 DECLARÓ EN CONTROVERSIA SUSTANCIAL, QUE NUNCA FUERON ADJUDICADOS EN JUICIO, Y QUE ESTE RECURSO EXPONE EXCLUSIVAMENTE PARA ILUSTRAR EL TRACTO PROCESAL DEL CASO Y SIN PRETENDER RELITIGAR NINGÚN ASUNTO PENDIENTE ANTE EL TRIBUNAL SUPREMO EN EL CASO CC-2026-0094.

El 7 de mayo de 2026 emitimos *Resolución* en la que se le concedió a la parte apelada hasta el 6 de junio de 2026 para expresarse. Transcurrido el término, el 11 de junio, se instó *Oposición a Recurso de Apelación en Solicitud de Revisión Judicial*, en exceso del plazo otorgado, sin haber solicitado prórroga oportunamente ni acreditar justa causa para la dilación. Por tanto,

lo decretamos como perfeccionado y a su vez, resolvemos sin la consideración de este escrito, el cual tenemos como no presentado.

Analizado el escrito de apelación y el expediente apelativo, así como estudiado el derecho aplicable, procedemos a resolver.

**III.**

**La desestimación**

Si bien en nuestro ordenamiento existe una clara política judicial de que todos los casos sean ventilados en sus méritos, garantizando así un debido proceso de ley a las partes, ello debe realizarse de forma justa, rápida y económica, y sin permitir "que una parte adquiera el derecho a que su caso tenga vida eterna en los tribunales manteniendo a la otra parte en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en la tramitación del mismo que una escueta referencia a circunstancias especiales". *Mun. de Arecibo v. Almac. Yakima,* 154 DPR 217, 221-222 (2001). Además, existe un importante interés de que todo litigante no se perjudique por los actos y omisiones de su abogado. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 745 (2005).

La Regla 39.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V R. 39.2, en su inciso (a), 32 LPRA Ap. V, R. 39.2 (a), dispone que:[40]

> (a)  Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o **de cualquier** reclamación contra ésta o la **eliminación de las alegaciones**, según corresponda.
>
> Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o **la eliminación de las alegaciones** tan s[o]lo procederá después que el tribunal, en primer término, **haya apercibido al abogado** o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. **Si el abogado** o abogada de la parte **no responde** a tal apercibimiento, **el tribunal procederá a imponer sanciones** al abogado o abogada de la parte y **se notificará directamente a la parte sobre la situación**. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma

---

[40] Énfasis nuestro.

> no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la **eliminación de las alegaciones**. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de **treinta (30) días**, a menos que las circunstancias del caso justifiquen que se reduzca el término.
>
> (b)(...)
>
> (c)(...) A menos que el tribunal en su orden de desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tiene el efecto de una adjudicación en los méritos. [Énfasis nuestro]

Como puede advertirse, la regla establece que, cuando se trate de un primer incumplimiento, la sanción severa de la desestimación de la demanda, o la eliminación de las alegaciones, solo podrá decretarse cuando se aperciba al abogado de la parte sobre la situación y se le conceda la oportunidad para responder. Si el abogado desatiende las órdenes judiciales que a tales efectos se emitan, entonces el tribunal impondrá sanciones al abogado "y se notificará directamente a la parte sobre la situación" y las consecuencias que puede tener si esta no se corrige. En otras palabras, no se decretará la desestimación del pleito y no se eliminarán las alegaciones de la demanda, sin que antes se aperciba directamente a la parte sobre la sanción. La razón para no imponer sanciones drásticas al cliente de forma inmediata es clara: de ordinario, la parte que ejercita su derecho en corte no está informada de los trámites judiciales rutinarios. *Pueblo v. Rivera Toro*, 173 DPR 137, 147 (2008); *Mun. de Arecibo v. Almac. Yakima, supra*, a la pág. 223; *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 814 (1986).

La Regla 39.2 (a), *supra*, también dispone que el tribunal deberá conceder a la parte con interés un término razonable, no menor de treinta (30) días, para corregir la situación. De incurrir en otro incumplimiento con posterioridad a la advertencia y a la imposición de sanciones económicas, entonces el tribunal quedará facultado para decretar la desestimación del caso. De esta manera,

antes de la desestimación de la reclamación, se brinda a la parte la oportunidad de tomar las medidas necesarias para salvaguardar la defensa de sus derechos y a que su caso se dilucide en sus méritos. *HRS Erase v. CMT*, 205 DPR 689,706 (2020).

De otra parte, la facultad de imponer sanciones económicas ante el incumplimiento con las órdenes del tribunal también surge de la Regla 37.7, 32 LPRA Ap. V, R. 37.7. A esos fines, la mencionada regla dispone:

> Si una parte o su abogado o abogada incumple con los términos y señalamientos de esta regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el **tribunal impondrá a la parte o su abogado o abogada** la sanción económica que corresponda. [Énfasis nuestro]

A pesar de la facultad que ostenta el tribunal para imponer sanciones, desestimar o eliminar las alegaciones, este curso de acción debe ser ejercido juiciosa y apropiadamente. *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982). La desestimación como sanción debe prevalecer sólo en situaciones extremas en las cuales "haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés y después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento". *Mun. de Arecibo v. Almac. Yakima, supra*, a la pág. 222. En fin;

> Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o de la eliminación de las alegaciones, tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida. La experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades [...] las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca podrá querellar, ante ningún foro, de

que se le despojó injustificadamente de su causa de acción y/o defensas. [nota al calce omitida]. *Maldonado v. Srio. de Rec. Naturales, supra*, a la pág. 498. Véase, además, *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288 (2012).

Por último, es preciso destacar que corresponde al TPI la dirección de los casos que tiene ante su consideración. Por ello, el desarrollo efectivo de los procesos judiciales requiere que ese foro tenga flexibilidad y discreción, así como poder y autoridad suficiente para conducir los asuntos litigiosos y para aplicar las medidas correctivas apropiadas, según su buen juicio, discernimiento y sana discreción. Estas medidas correctivas tienen el propósito de disuadir a aquellos litigantes que recurren a la dilación o al entorpecimiento de los procesos como estrategia en la litigación. Por consiguiente, los foros apelativos solo podrán intervenir con esas prerrogativas judiciales <u>cuando detecten abuso de discreción, pasión, prejuicio, arbitrariedad o error manifiesto en la determinación apelada o recurrida, o cuando sea absolutamente necesario para evitar el fracaso de la justicia</u>. *Pueblo v. Vega, Jiménez*, 121 DPR 282, 287 (1988); y *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 815 (1978).

**III.**

La apelante señaló que el TPI erró al ordenar la desestimación con perjuicio cuyo mandato no había sido remitido, lo que constituye una actuación sin jurisdicción y nula de pleno derecho. Asimismo, planteó que incidió al omitir la secuencia protectora obligatoria y no discrecional de la Regla 39.2(a) de las de Procedimiento Civil, pasando directamente de sanciones económicas a la desestimación con perjuicio sin conceder el término mínimo estatutario de treinta (30) días, en violación del debido proceso de ley. A su vez, la señora Rosario Polanco argumentó que actuó incorrectamente el foro apelado al dictar la *Sentencia Parcial* en una premisa fáctica incorrecta y al desestimar con perjuicio sin

adjudicar planteamientos sustantivos pendientes de la apelante, en violación del derecho constitucional a ser oída.

Esta también arguyó que el foro *a quo* erró al aplicar la sanción más drástica disponible en ley de forma manifiestamente desproporcionada, sin explorar remedios intermedios y sin ponderar que la conducta de la peticionaria no constituía contumacia absoluta ni abandono del pleito, en contravención de la política pública de adjudicación en los méritos. Además, expuso que incurrió en error al denegar la *Moción de reconsideración* (Entrada núm. 580) mediante una resolución de un párrafo que calificó de "generalidades" un escrito de quince páginas con treinta y tres párrafos numerados y jurisprudencia específica, sin adjudicar ni uno solo de los planteamientos sustantivos presentados.

Por último, la apelante precisó que el tribunal de primera instancia falló al desestimar con perjuicio la demanda calificando como obstaculización el ejercicio del derecho constitucional a la revisión judicial, cuando lo que permanecía en controversia no era la valoración del negocio como activo ($740,000) ni su adjudicación al apelado — ambas finales y firmes (Entrada núm. 400 — sino la valoración de la participación específica de la peticionaria ($128,500). Sobre esto, añadió que dicha determinación descansa en trece hechos materiales que la Resolución de sentencia sumaria de 27 de enero de 2021, declaró en controversia sustancial, que nunca fueron adjudicados en juicio, y que este recurso expone exclusivamente para ilustrar el tracto procesal del caso y sin pretender relitigar ningún asunto pendiente ante el Tribunal Supremo en el Caso CC-2026-0094.

De entrada, precisa advertir que el TPI, en el dictamen apelado, desestimó la demanda instada por la apelante conforme con **lo dispuesto en la Regla 39.2 (a) de las de Procedimiento Civil,** *supra,* y ordenó la continuación de los procedimientos

respecto a la *Reconvención* incoada por el señor Rosario Polanco. Por lo que, atenderemos las controversias ante nos acorde con los hechos procesales que el TPI consideró para arribar a la conclusión.

Asimismo, despachamos el primer error acentuando que la presentación de un recurso de *certiorari* no paraliza el trámite judicial ante el TPI. Más aún, ambos autos de *certiorari*, TA2025CE00782 y TA2026CE00021, fueron denegados por esta *Curia*. Al respecto, destacamos que la denegatoria de un tribunal apelativo a expedir un recurso de *certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos. En este sentido, no se prejuzga los méritos del asunto o de la cuestión planteada pues se podrá presentar nuevamente en un futuro recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *García v. Padró*, 165 DPR 324, 336 (2005).

Por otro lado, en cuanto a la figura del mandato, como figura procesal dentro de un sistema de derecho ordenado, nuestro más Alto Foro tuvo la oportunidad de expresarse recientemente en *Rivera Camacho v. Publi-Inversiones de Puerto Rico*, 2026 TSPR 54, 218 DPR ___ (2026). En lo aquí pertinente, la más Alta Curia definió la figura del mandato, en términos generales, como "**una orden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia**". El mandato, según continúa el Tribunal Supremo, adquiere mayor relevancia en lo concerniente a los asuntos de índole jurisdiccional. En ese sentido, debemos apuntalar, que la actuación del foro recurrido, **relacionado con el asunto paralizado**, será nulo si se emite antes de que le sea devuelta la jurisdicción con la emisión de un mandato. Véase *Rivera Camacho v. Publi-Inversiones de Puerto Rico,* supra; *Colón y otros v. Frito Lays*, 186 DPR 135, 154 (2012); *Pérez, Ex parte v. Depto. de la Familia,* 147 DPR 556, 570 (1999). Y

es que, una vez se paralizan los procedimientos en el foro recurrido, **ya sea por orden expresa del tribunal apelativo o por efecto de la presentación de un recurso**, el foro inferior pierde su jurisdicción para continuar los procedimientos relativos a la controversia recurrida. Véase *Rivera Camacho v. Publi-Inversiones de Puerto Rico*, supra; *Pueblo v. Pérez*, 159 DPR 554, 564 (2003); *Pérez, Ex parte v. Depto. de la Familia*, supra.

Así, debemos ser enfáticos en que la presentación de un recurso de *certiorari*, contrario a uno de *apelación*, no paraliza ni priva automáticamente al foro inferior de jurisdicción sobre los asuntos en controversia planteados en este. De manera que, a no ser que por orden expresa del foro apelativo para paralizar los procedimientos, el foro recurrido no pierde jurisdicción sobre la controversia. Esto cobra mayor relevancia ante la denegatoria a expedir recursos discrecionales y en las desestimaciones de este tipo de recurso. Pues, el mandato, ya sea como figura procesal, sólo cobra sentido en los procesos judiciales ante recursos que tienen el efecto de paralizar o ante una orden de paralización del foro apelativo, en recursos discrecionales, para dilucidar el asunto sin que este se torne académico o cause mayores daños a la administración de la justicia.

Ahora bien, respecto a los errores segundo y cuarto hacemos el siguiente recuento del trámite procesal pertinente a las controversias que nos ocupan, dando énfasis a varias órdenes del foro *a quo*, para atenderlos adecuadamente.

En la *Moción en Cumplimiento de Orden y Recomendación al Tribunal sobre la Solicitud de Adjudicación Parcial de Bienes Gananciales*[41] presentada ante el TPI, el 19 de junio de 2024, el Contador Partidor y Comisionado recomendó al tribunal que la

---

[41] SUMAC TPI, Entrada núm. 397.

Panadería Rica Dona, tomando en cuenta el interés del apelado en adquirir el negocio, le sea vendido o adjudicado a este por el valor estimado de $740,000. Asimismo, recomendó tomar en cuenta el balance actualizado de las deudas con las agencias de gobierno bajo la entidad jurídica Panadería Rica Dona, Inc., el que incluyendo recargos, penalidades e intereses asciende a $435,347.65.

El **5 de julio de 2024**, notificada el 8 siguiente, el foro primario emitió Orden[42], en respuesta a la *Moción en cumplimiento de orden y recomendación al Tribunal sobre la solicitud de adjudicación parcial de bienes gananciales.*[43] Mediante esta, el foro revisado acogió las recomendaciones esbozadas en el informe específicamente las enumeradas de la letra a–g (incluye la *f. Panadería Rica Dona*) más **ordenó y autorizó a las partes gestionar los asuntos requeridos para la venta y adjudicación de los bienes según allí desglosados**. Además, requirió que se le informasen los trámites realizados en un plazo de treinta (30) días.

Mediante la Resolución del 10 de septiembre de 2025, atendidos varias controversias instadas por la apelante mediante *Urgentísima Moción en Relevo de Orden* al palio de la Regla 49.2 de las de Procedimiento Civil, en lo atinente, relativas a la valorización y operación de la Panadería Rica Dona, el TPI decretó que:[44]

> Como ya hemos explicado las alegaciones que trae la parte demandante [apelante] carecen de fundamento fáctico y técnico. Es por eso, que en este caso el tribunal ha nombrado un Comisionado Especial y se han tenido que contratar profesionales Contables y CPA para poder enderezar asuntos que la Panadería no ten[í]a en control previo a la partición.
>
> (…)
>
> Por los fundamentos antes expuestos se declara **NO HA LUGAR** la *Urgentísima Moción de Relevo de Orden* presentada por la parte demandante [apelante]. **El tribunal se reitera en la Orden emitida el 5 de julio de 202[4] y sostiene que lo procedente es llevar a cabo la liquidación parcial de los bienes, incluyendo**

---

[42] SUMAC TPI, Entrada núm. 400.
[43] SUMAC TPI, Entrada núm. 397.
[44] SUMAC TPI, Entrada núm. 436, a la pág. 14. Énfasis e itálicas en el original y énfasis nuestro.

**la Panadería Rica Dona, Inc. Es evidente que el retraso de la liquidación parcial pone en riesgo la continuidad y el valor del negocio de la panadería comprometiendo los recursos económicos y el flujo de efectivo del negocio**.

A su vez, en la Resolución emitida el 7 de octubre de 2025 el tribunal revisado, ante diversos planteamientos traídos por la señora Rondón Acosta sobre la operación de la Panadería Rica Dona, mantuvo la Orden sobre liquidación parcial del 5 de julio de 2024 más expresó que:[45]

> Se advierte a las partes que es necesario llegar a un consenso para dividir estos bienes. En todo este tiempo, las partes no pueden ponerse de acuerdo, las partes mantienen al tribunal atendiendo los asuntos de negocios que las partes tienen a la vez que incumplen con sus obligaciones. El tribunal no puede permanecer indefinidamente en esta situación. **Por tanto, si las partes no cooperan se les apercibe de que el incumplimiento conllevará sanciones severas.**

Por otro lado, en la Resolución del 20 de noviembre de 2025, notificada al próximo día, en la que resolvió la *Moción Urgente de Reconsideración* presentada por la apelante, el TPI hizo un recuento de órdenes emitidas y enfatizó que "...al día de hoy, la parte demandante continua sin cumplir la orden emitida el **5 de julio de 2024**."[46]

Además, **apercibió a la señora Rondón Acosta así**:

> **Se le apercibe a la parte demandante [apelante] que si incumple nuevamente con lo aquí ordenado se van a imponer sanciones económicas como preámbulo para la desestimación de esta demanda. El tribunal no puede avalar que las órdenes no sean cumplidas, que las mismas no tengan efecto coercitivo para las artes y que el caso se mantenga en una pugna constante que impida la disposición final. Esto ha sido advertido a la parte demandante anteriormente**. [Énfasis nuestro]

El 3 de diciembre de 2025 el foro apelado emitió *Resolución y Orden*[47] en la que atendió la *Segunda Moción de Relevo de Orden (Regla 49.2(c) y (f)*, incoada por la señora Rondón Acosta, y entre otras expresiones, señaló que:[48]

---

[45] SUMAC TPI, Entrada núm. 447. Énfasis nuestro.
[46] SUMAC TPI, Entrada núm. 490.
[47] SUMAC TPI, Entrada núm. 510.
[48] *Íd.*, a las págs.  1 y 8.  Notas al calce omitidas. Énfasis y subrayado en el original.

El pasado 10 de septiembre de 2025 el tribunal dispuso mediante Resolución lo siguiente:

[...] El tribunal se reitera en la Orden emitida el 5 de julio de 2025 (sic) y sostiene que lo procedente es llevar a cabo la liquidación parcial de los bienes, incluyendo la Panadería Rica Dona, Inc. Es evidente que **el retraso de la liquidación parcial pone en riesgo la continuidad y el valor del negocio de la panadería comprometiendo los recursos económicos y el flujo de efectivo del negocio**. (Énfasis nuestro).

Aclaramos como hemos hecho en escritos previos, que la Orden a la que el tribunal hizo referencia fue emitida el **5 de julio de 2024** y no 2025 según surge del expediente de SUMAC.

Posteriormente, el tribunal reiteró mediante Resolución emitida el pasado 7 de octubre de 2025, una serie de medidas dirigidas para cumplir con lo ordenado previamente y atender la notificación de embargo, que recayó en el negocio. Estas medidas incluyen: (1) Una reducción en los salarios de algunos empleados de la Panadería Rica Dona, Inc., la cual es administrada por las partes; y (2) El cambio de nombre de la cuenta de LUMA, cuenta que actualmente está a nombre de la demandante en epígrafe, (en adelante, "la demandante").

Por otro lado, el cumplimiento con lo dispuesto en las dos Resoluciones mencionadas anteriormente fue prorrogado, por el tribunal mediante Orden emitida el pasado 3 de noviembre advirtiendo de igual forma que lo ordenado el 23 de octubre de 2025 no era materia nueva, responde a la orden del 5 de julio de 2024, reiterado el 10 de septiembre de 2025 y el 7 de octubre de 2025.

(...)

**Finalmente, el tribunal ha apercibido a la demandante en varias ocasiones de la imposición de sanciones por no cesar con su conducta de litigar asuntos que ya el tribunal adjudicó. Como consecuencia de la reiterada conducta de la demandante, se le impone una sanción de $500.00 dólares a favor del demandado.**

Se advierte a la parte demandante que de continuar presentado mociones donde se relitiguen asuntos ya resueltos por el tribunal y no cumpla con lo ordenado se desestimará la Demanda.

Por lo que, acorde con los múltiples pronunciamientos allí consignados determinó lo siguiente:[49]

2. **Se le impone una sanción de $500.00 a la parte demandante Luisa B. Rondón Acosta, por no cesar su conducta hacia el tribunal y el demandado y cumplir con las gestiones ordenadas por el tribunal. Se conceden 20 días finales para el pago de la**

---

[49] *Íd.*, a la pág. 8. Nota al calce omitida. Énfasis nuestro.

**sanción, lo cual se hará mediante consignación en el tribunal.**

**3. De Luisa B. Rondón Acosta incumplir con lo ordenado, o no cesar su conducta hacia el tribunal y el demandado, se dictará desestimación de la Demanda y se procederá a archivar el caso; y**

**4. Se ordena a secretaria a notificar a Luisa B. Rondón Acosta, directamente para cumplir con la Regla 39.2 de Procedimiento Civil.**

Por su parte, mediante la Resolución del 16 de diciembre de 2025, el foro apelado consideró una moción de reconsideración presentada por la apelante, y allí apuntaló, entre otras expresiones, que:[50]

Ya este tribunal ha expresado que la parte demandante interpreta y tergiversa las órdenes del tribunal. Este tribunal lleva meses tratando de que las resoluciones y órdenes que han sido emitidas sean cumplidas. Todas las resoluciones emitidas por este tribunal incluyendo la resolución emitida el 3 de diciembre de 20251 recogen el tracto de los asuntos incumplidos por la parte demandante y los fundamentos por los que este tribunal se reitera en lo dispuesto y ordenado específicamente desde el 5 de julio de 2024. Es evidente que la parte demandante ha insistido en su intención de no cumplir con lo ordenado y el expediente manifiesta las continuas mociones presentadas.

Asimismo, en el dictamen, el TPI advirtió nuevamente que:

Por tanto, se apercibe nuevamente a la demandante de su deber de cumplir con lo ordenado por el tribunal, se ordena a que proceda al pago de las sanciones y corrija la reiterada conducta de relitigar los asuntos ya atendidos por este tribunal. Se apercibe que de incumplir una vez más, el tribunal tomará las medidas que entienda pertinentes entre las cuales está la descalificación.

De otro lado, en la Resolución emitida y notificada el 16 de enero de 2026, el foro *a quo*, entre dictámenes en los que atendía nuevamente reclamos incoados por la señora Rondón Acosta, ordenó la continuación de los procedimientos conforme con lo resuelto **en la Resolución del 20 de noviembre de 2025**. Sobre esto, subrayó que:[51]

En esta etapa de los procedimientos, es crucial que la parte demandante cumpla con lo ordenado por el tribunal el 20 de noviembre de 2025, destacando la necesidad de comenzar el proceso de quiebra, en beneficio de la Corporación según recomendación del

---

[50] SUMAC TPI, Entrada núm. 524, a la pág. 3.
[51] SUMAC TPI, Entrada núm. 544, a la págs. 8-9.

Comisionado. En dicha resolución el tribunal impartió órdenes precisas que incluyen asuntos del 2024 que aun la parte demandante no ha cumplido.

Por último, en otra Resolución emitida el 16 de enero, notificada el 20 siguiente, el TPI resolvió varias argumentos y objeciones presentados por la apelante y dictaminó que:[52]

> Luego de evaluar los escritos este tribunal nuevamente se reitera en el cumplimiento cabal de la resolución emitida el 20 de noviembre de 2025. La ejecución y trámite de lo ordenado no ha sido paralizado por el tribunal apelativo. De hecho, la dilación pone en riesgo las gestiones y encomiendas que al Comisionado especial se le han encomendado en beneficio de la corporación.
>
> [...]
>
> **De incumplir la parte demandante en los próximos 7 días, se emitirá orden al amparo de la Regla 34.3 (b) de Procedimiento Civil, 32 LPRA Ap.V.R.34.3.**
>
> **En cuanto a la objeción para la contratación del Lcdo. Héctor Eduardo Pedrosa Luna, el tribunal entiende que es procedente y por lo tanto, no autoriza su contratación.**
>
> [...]
>
> **Se ordena que esta resolución sea notificada también a la parte demandante directamente además de su representación legal.**

De la narración antes expuesta, no podemos abstraernos de la realidad fáctica respecto a que el TPI ha intentado agilizar el trámite relativo a la liquidación parcial de los bienes gananciales, en especial, la Panadería Rica Dona, según ordenó en la Orden del 5 de julio de 2024. Además, el tribunal primario, aunque entienda, como expresó en el dictamen impugnado, que la actitud de la apelante complica la continuidad de las operaciones de la corporación y se pone en riesgo el valor del negocio de la panadería comprometiendo los recursos económicos y el flujo de efectivo del negocio, previo a desestimar la demanda, debió seguir el proceso que dispone la Regla 39.2(a) de las de Procedimiento Civil, *supra*. Ello es así, toda vez que dicho procedimiento tiene el propósito de salvaguardar las garantías

---

[52] SUMAC TPI, Entrada núm. 545, a las págs. 2-3. Énfasis y subrayado en el original y énfasis nuestro.

del debido proceso de ley de la parte que se vería afectada por la sanción. *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714 (2009). Abundamos.

Como mencionáramos, del trámite procesal antes descrito, así como del análisis minucioso el expediente electrónico resulta forzoso concluir que el foro apelado no aplicó los mecanismos que provee nuestro ordenamiento procesal previo a desestimar la demanda. Sobre ello, recordemos que la única sanción económica que impuso el TPI fue directamente a la señora Rondón Acosta mediante la Resolución y Orden del 3 de diciembre de 2025. También quedó demostrado que el foro primario, aun cuando en varias ocasiones, ha apercibido de la imposición de sanciones y medidas más drásticas, lo ha advertido directamente a la señora Rondón Acosta. Esto, sin previamente apercibir al representante legal de esta sobre la imposición de sanciones en su contra o sancionarlo y permitirle al abogado corregir la situación.

En este punto, indica la señora Rondón Acosta en el escrito apelativo que:

> [L]a sanción económica de $500 fue impuesta en la Entrada #510 (3 de diciembre de 2025) directamente a la Sra. Rondón Acosta —no a su abogada—, saltando el paso obligatorio de sancionar primero al abogado o abogada antes de dirigirse a la parte. [...] No consta en el récord que luego de la imposición de la sanción económica y la notificación directa a la parte, el tribunal concediera el término mínimo estatutario de treinta (30) días con apercibimiento específico de que el próximo paso sería la desestimación de la demanda con perjuicio.

Respecto a esto último, advertimos que la Regla 39.2(a), *supra*, diáfanamente preceptúa que, como parte del debido proceso de ley, el tribunal conceda a la parte un término razonable para corregir la situación no menor de treinta (30) días excepto si circunstancias exigen que se reduzca el mismo.

Tampoco obviemos que, posterior a dicha única sanción impuesta el 3 de diciembre de 2025, en la segunda Resolución

emitida el 16 de enero de 2026, el TPI **por vez primera apercibió** a la apelante que de incumplir con lo allí ordenado emitiría una orden al amparo de la Regla 34.3 (b) de las de Procedimiento Civil, 32 LPRA Ap.V.R.34.3, más ordenó que el dictamen fuera notificado a la señora Rondón Acosta y a su representación legal.  No obstante, ello no ocurrió, y luego de este apercibimiento, el 6 de marzo de 2026 el foro apelado emitió la *Sentencia Parcial* objetada en la que desestimó con perjuicio la demanda instada por la apelante.

Sobre este proceder, se hace importante subrayar que al interpretar la referida regla el Tribunal Supremo ha decretado que previo a la sanción de la desestimación el ordenamiento exige la imposición de medidas progresivas que incluye un apercibimiento anterior a la parte. *HRS Erase v. CMT*, supra, a la pág. 702.  En específico, en este caso, el más Alto Foro puntualizó que:

> Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, **imponer las mismas al abogado de la parte**. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, *tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida.* (Énfasis nuestro e itálicas en el original). *Íd.*, citando a *Maldonado v. Srio. de Rec. Naturales*, supra, a la pág. 498.

De otra parte, como bien expresa la apelante en el recurso de apelación ante nos, ella no abandonó el pleito y, por el contrario, mantuvo su interés en litigar el caso mediante la presentación de múltiples escritos en respuesta a las órdenes del tribunal y en otros, impugnando las mismas.

Asimismo, y como constatamos, la señora Rondón Acosta instó mociones en las que exponía sus objeciones en contra de la pretensión del apelado o impugnaba las recomendaciones o los cursos de acción propuestos por el Contador Partidor y Comisionado, en especial, sobre los asuntos operacionales y la

alternativa de someter la quiebra de la Panadería Rica Dona, y en otras, manifestaba los argumentos en favor de sus planteamientos. Podemos mencionar, por ejemplo, que en la Resolución del 16 de enero de 2026, el foro revisado accedió al planteamiento de la apelante objetando la contratación del Lcdo. Héctor Eduardo Pedrosa Luna para el procedimiento de la quiebra de la corporación.

También la señora Rondón Acosta instó recursos ante esta *Curia* para que se revisara algunas de las determinaciones del TPI. Lo que demuestra que esta no actuó con desidia en la litigación de sus defensas y alegatos.

En virtud de lo anterior, la medida drástica de la desestimación, acorde con las particularidades de este caso, debió ser el último recurso a utilizarse después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y en todo caso, como explicamos, no debería procederse a ella sin un previo apercibimiento. *Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823, 829-830 (1962).

En resumen, nos parece imperativo reseñar que nuestro Tribunal Supremo reconoció que la Regla 34.3(b)(3), *supra,* de las de Procedimiento Civil resulta similar a la Regla 39.2(a) del mismo cuerpo procesal, puesto que ambas exigen que, previo a la imposición de una sanción como la eliminación de las alegaciones, se notifique y aperciba directamente a la parte de la situación procesal del caso. *HRS Erase v. CMT*, supra*, a las págs. 707-708.

Por ende, el foro revisado actuó incorrectamente al utilizar la opción de la desestimación de todas las causas de acción instadas en la demanda. Ello, conlleva privar a la apelante de su día en corte, lo que como sanción primaria tiene serias implicaciones. No podemos ignorar que la propia señora Rondón Acosta expone en el recurso apelativo que el tribunal primario podía imponer

primeramente sanciones económicas adicionales y de mayor cuantía antes de desestimar la demanda.

Enfatizamos que el Tribunal Supremo ha establecido, de forma reiterada, que la desestimación solo procede en casos extremos donde existe una conducta caracterizada por la desidia y el abandono total del caso. Más aún, el más Alto Foro ha decretado consistentemente que el poder discrecional de desestimar una demanda se debe ejercer juiciosa y apropiadamente y sólo debe hacerse en casos en que no haya duda de la irresponsabilidad y contumacia de la parte contra quien se toman las medidas drásticas. *Acevedo v. Compañía Telefónica de PR*, 102 DPR 787, 791 (1974). Lo cual, como explicamos, no ocurrió en el presente caso.

Por tanto, debido a los efectos que conlleva la desestimación, era menester que el TPI atemperara "su aplicación, frente a la política pública de que los casos se ventilen en sus méritos. Ciertamente, el uso desmesurado de este mecanismo procesal puede vulnerar el fin que persiguen los tribunales, que es impartir justicia". *Sánchez Rodríguez v. Adm. de Corrección*, supra, a la pág. 721.

En conclusión, el foro apelado cometió los errores segundo y cuarto y ello hace innecesario atender los restantes.

**IV.**

Por los fundamentos antes expuestos, revocamos la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones